UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| LISSETTE B.,[1] | ) |
| | ) No. 20 CV 7685 |
| Plaintiff, | ) |
| | ) |
| v. | ) Magistrate Judge Young B. Kim |
| | ) |
| KILOLO KIJAKAZI, Commissioner of Social Security, | ) |
| | ) |
| | ) March 20, 2023 |
| Defendant. | ) |

**MEMORANDUM OPINION and ORDER**

Lissette B. seeks disability insurance benefits ("DIB") asserting she is disabled by various medical conditions. Before the court are the parties' cross motions for summary judgment. For the following reasons, Lissette's motion is granted, and the government's is denied:

**Procedural History**

Lissette filed her application for disability benefits in May 2018, alleging disability onset in October 2017. (Administrative Record ("A.R.") 27, 170-76.) At the administrative level, her application was denied initially and upon reconsideration. (Id. at 27, 68-96.) She then sought and was granted a hearing before an Administrative Law Judge ("ALJ"). (Id. at 27, 110-11, 153-54.) Lissette appeared with her attorney at the March 2020 telephone hearing, during which Lissette and a vocational expert ("VE") testified. (Id. at 27, 45-67.) The ALJ ruled in May 2020 that

---

[1] Pursuant to Internal Operating Procedure 22, the court uses Plaintiff's first name and last initial in this opinion to protect her privacy to the extent possible.

Lissette was not disabled. (Id. at 27-40.) The Appeals Council denied Lissette's request for review, (id. at 12-16), making the ALJ's decision the final decision of the Commissioner, *see Jozefyk v. Berryhill*, 923 F.3d 492, 496 (7th Cir. 2019). Thereafter, Lissette filed this lawsuit seeking judicial review, and the parties consented to this court's jurisdiction. *See* 28 U.S.C. § 636(c); (R. 6).

## Analysis

Lissette argues that the ALJ's decision cannot stand because: (1) the Commissioner's appointment violates constitutional separation of powers; (2) the ALJ improperly evaluated the medical opinion evidence; (3) the ALJ erroneously found that Listing 1.04(A) was not satisfied; (4) the ALJ did not support her RFC with substantial evidence; and (5) the ALJ performed a legally deficient symptom assessment. (R. 15, Pl.'s Mem. at 5-15.)

When reviewing the ALJ's decision, the court asks only whether the ALJ applied the correct legal standards and her decision has the support of substantial evidence, *Burmester v. Berryhill*, 920 F.3d 507, 510 (7th Cir. 2019), which is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion," *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (quotation and citations omitted). This deferential standard precludes the court from reweighing the evidence or substituting its judgment for the ALJ's, allowing reversal "only if the record compels" it. *Deborah M. v. Saul*, 994 F.3d 785, 788 (7th Cir. 2021) (quotation and citation omitted). In this circuit the ALJ must also "provide a 'logical bridge' between the evidence and his conclusions." *Butler v. Kijakazi*, 4 F.4th 498, 501 (7th Cir. 2021).

2

Put another way, the ALJ's "analysis must say enough to enable a review of whether the ALJ considered the totality of a claimant's limitations." *Lothridge v. Saul*, 984 F.3d 1227, 1233 (7th Cir. 2021). Having considered Lissette's arguments and the record, the court concludes that remand is required here.

### A.  Separation of Powers

The court addresses Plaintiff's constitutional argument first as it may be dispositive. Lissette argues her case should be remanded because the Social Security Administration ("SSA") is unconstitutionally structured. (R. 15, Pl.'s Br. at 6-7.) Lissette relies on *Seila Law LLC v. Consumer Financial Protection Bureau* ("CFPB"), 140 S. Ct. 2183, 2197 (2020), in which the Supreme Court held that "the CFPB's leadership by a single individual removable only for inefficiency, neglect, or malfeasance violates the separation of powers." Lissette contends that the SSA's structure mirrors the CFPB's insofar as the SSA has a single Commissioner who may be removed only for cause ("neglect of duty or malfeasance in office") and serves a term longer than that of the President of the United States, as set forth in 42 U.S.C. § 902(a)(3). (R. 15, Pl.'s Br. at 7.) As such, Lissette asserts that the Commissioner's authority is "constitutionally defective" and she was thus deprived of a "valid administrative adjudicatory process." (Id. at 6-7.)

The government concedes that the SSA's structure provided in Section 902(a)(3) "violates the separation of powers to the extent it is construed as limiting the President's authority to remove the Commissioner without cause." (R. 23, Govt.'s Mem. at 2.) But it asserts that no separation-of-powers concerns apply

3

here because the ALJ who denied the current claim had her appointment ratified by then-Acting Commissioner Nancy Berryhill. (Id. at 3-5.) As an Acting Commissioner, Berryhill was not appointed pursuant to Section 902(a)(3) and could be removed at will, thus eliminating any possibility of a constitutional violation. (Id. at 3.)

Regardless, the year after the Supreme Court decided *Seila*, it held in *Collins v. Yellen*, 141 S. Ct. 1761, 1783 (2021), that an unconstitutional removal restriction does not render invalid the lawful appointment of an agency head. *See Teddy J. v. Kijakazi*, No. 21 CV 1847, 2022 WL 4367577, at *2 (N.D. Ill. Sept. 21, 2022); *Michelle D. v. Kijakazi*, No. 21 CV 1561, 2022 WL 972280, at *6 (N.D. Ill. March 31, 2022). Here, Berryhill was lawfully appointed, and there is "no basis for concluding that [she] lacked the authority to carry out the functions of the office." *Collins*, 141 S. Ct. at 1788.

Even if Lissette could mount a constitutional challenge based on Section 902(a)(3), she cannot show the requisite nexus between that provision's removal restriction and any harm to her. (R. 23, Govt.'s Mem. at 3-6.) In the wake of the *Collins* decision, "numerous courts have ruled that a frustrated Social Security applicant . . . must show that the unconstitutional removal provision actually harmed her in some direct and identifiable way." *Cheryl T. v. Kijakazi*, No. 20 CV 6960, 2022 WL 3716080 (N.D. Ill. Aug. 29, 2022) (collecting cases). Lissette does not identify any direct harm in her motion. (R. 15, Pl.'s Br. at 6-7.) In her reply she suggests that *Collins* does not apply and harm may be presumed. (R. 24, Pl.'s Reply at 12.) But Lissette's position goes against the tide, so the court declines to infer the harm

4

required. *Collins*, 141 S. Ct. at 1789. As Justice Kagan wrote in her concurring opinion in *Collins*, "[g]ranting relief" where the plaintiff cannot demonstrate an unconstitutional removal restriction caused harm "would, contrary to usual remedial principles, put the plaintiff[] 'in a better position' than if no constitutional violation had occurred." *Id.* at 1801. That said, a remand is required in this case on other grounds.

**B. Medical Evidence**

As Lissette correctly argues, the ALJ failed to support her evaluation of the state agency psychologists' opinions with substantial evidence. (R. 15, Pl.'s Br. at 7-10.) The reviewing psychologists found that Lissette had: (1) mild limitations in understanding, remembering, and applying information and adapting and managing oneself; and (2) moderate limitations in interacting with others and concentrating, persisting, and maintaining pace. (A.R. 37.) When considering Lissette's mental residual functional capacity ("RFC"), they determined that she could understand and remember short, simple instructions and perform simple, one-to-two step tasks, but that she should not interact with the general public. (Id.)

The ALJ found "persuasive" the reviewing psychologists' mental RFC, noting their opinions are "well supported by the record" and they "carefully considered the claimant's complaints, treatment records, and performance" at the consultative examination. (Id.) Nonetheless, the ALJ rejected their findings limiting Lissette to "one-to-two step tasks" because—in the ALJ's view—it was "too restrictive as it would preclude many activities" that Lissette performs, such as "driving, using electronic

5

devices to shop and communicate with others, and caring for family members." (Id.) Lissette asserts that in so doing the ALJ erred by also rejecting the one-to-two step task limitation and instead limiting her to "simple routine tasks." (R. 15, Pl.'s Br. at 7-10; A.R. 34.) The court agrees.

The Seventh Circuit has not addressed whether there is an appreciable difference between a one-to-two step task limitation and a simple, routine task limitation. Although there is no "consensus" among the trial courts in this circuit, *Michael S. v. Saul*, No. 19 CV 4033, 2020 WL 4052903, at *4 n.5 (N.D. Ill. July 20, 2020), most have answered this question affirmatively, remanding decisions in which the ALJ did not sufficiently articulate an apparent rejection of a one-to-two step task limitation in favor of a simple task, *see, e.g.*, *id.* at 4; *Rita R. v. Kijakazi*, No. 21 CV 5631, 2023 WL 2403139, at *3 (N.D. Ill. March 8, 2023); *Angelica R. v. Kijakazi*, No. 21 CV 50369, 2023 WL 1971647, at *3 (N.D. Ill. Jan. 6, 2023); *Gwendolyn M. v. Saul*, No. 20 CV 606, 2022 WL 1000359, at *4 (S.D. Ill. April 4, 2022). The difference lies in the fact that a simple task restriction "may involve complexity beyond one-to-two step tasks," *Rita R.*, 2023 WL 2403139, at *4, such as "jobs with a Reasoning Level of 2 or higher," *Kevin W. v. Kijakazi*, No. 20 CV 6557, 2023 WL 35178, at *4 (N.D. Ill. Jan. 4, 2023). By contrast, the one-to-two step task limitation has been interpreted as limiting claimants to jobs with a Reasoning Level of 1. *See Kevin W.*, 2023 WL 35178, at *4.

Here, despite finding the reviewing psychologists' opinions "persuasive," the ALJ nevertheless rejected their opinion limiting Lissette to one-to-two step tasks

6

without adequately explaining why she did so. (A.R. 37.) While the ALJ need not grapple with every piece of evidence or explain every limitation in the RFC, *see Deborah M.*, 994 F.3d at 788, she must "provide a 'logical bridge' between the evidence and [her] conclusions," *Butler*, 4 F.4th at 501. *See also Mack v. Berryhill*, No. 16 CV 11578, 2018 WL 3533270, at *3 N.D. Ill. July 23, 2018 (finding that ALJ "must build a logical bridge from the evidence to [her] conclusion that Claimant should not be limited to one to two step tasks"). The ALJ did not do so here. Although she suggested that Lissette's daily activities, such as driving, using electronic devices to shop and communicate, and caring for family, conflicted with the ability to perform only one-to-two step tasks, she did not explain why that was so. Nor did the ALJ explain how a simple, routine task limitation adequately accounted for the restrictions the reviewing psychologists ascribed.

Accordingly, the court remands this matter so that the ALJ may sufficiently explain her task-based restriction and, if needed, craft a new RFC to conform with her finding. Despite finding remand necessary on this ground, the court addresses Lissette's Listing 1.04(A) argument to streamline issues to be decided on remand.

## C.     Listing 1.04(A)

Lissette asserts that the ALJ improperly determined that her spinal impairment does not meet the requirements of Listing 1.04(A).[2] (R. 15, Pl.'s Br. at 10-11.) To fall under a listed impairment the claimant must satisfy all of the listing's

---

[2] As the government notes, after the ALJ issued her decision, Listing 1.04 was replaced by Listing 1.15. (R. 23, Govt.'s Mem. at 15 n.5.)

criteria. *Rice v. Barnhart,* 384 F.3d 363, 369 (7th Cir. 2004). To meet Listing 1.04(A) for spinal disorders, Lissette had to show "a compromised nerve root or spinal cord as evidenced by certain specified criteria," such as "compressed nerve root, sensory or reflex loss, and a positive straight-leg test." *Taylor v. Kijakazi*, No. 21-1458, 2021 WL 6101618, at *2 (7th Cir. Dec. 22, 2021 (citing 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 1.04(A)). The ALJ determined that Lissette did not meet the required showing because although her spinal disorder constituted a severe impairment, the medical record did not show evidence of "the nerve root compression . . . required to meet [L]isting 1.04[A]." (A.R. 31.)

Lissette contests the "perfunctory" nature of the ALJ's Listing 1.04(A) analysis, which at step three of the five-step evaluation process was limited to one sentence followed by cites to the medical record. (R. 15, Pl.'s Br. at 10.) The evidence cited by the ALJ shows that after driving home from Tennessee in April 2019, Lissette suffered acute lumbar back pain with lower-left extremity sciatic pain, for which she underwent hemilaminectomy and diskectomy procedures at L4-L5. (A.R. 31 (citing id. at 545-48, 1712, 1719, 1837).) Later that year, Lissette had 5/5 strength in both lower extremities with some decreased sensation. (Id. at 1719.) In January 2020 her gait and station were "[s]low, broad-based with the help of a cane." (Id. at 1713.) While these records affirm the severity of Lissette's spinal disorder, as the ALJ found at step two, (id. at 29), they do not document nerve root compression, consistent with the ALJ's finding at step three.

8

Furthermore, when assessing Lissette's RFC before step four, the ALJ discussed evidence related to her Listing 1.04(A) analysis. In July 2018 Lissette reported upper back pain but on examination had normal gait, strength, and range of motion. (Id. at 35 (citing id. at 351-54).) Likewise, although Lissette used a walker after her April 2019 back surgery, she had normal gait without pain in November 2019. (Id. at 36 (citing id. at 1715).) That same month, Lissette underwent electrodiagnostic testing showing "chronic bilateral S1 radiculopathy." (Id. (citing id. at 1824-25).) But the medical records do not show any evidence of nerve root compression, as required to meet Listing 1.04(A). (Id. at 545-48, 1712-14, 1718-20, 1837-38.)

Lissette disagrees that the medical evidence does not satisfy the criteria of Listing 1.04(A). She cites records that, according to her, establish "nerve root compromise," including a May 2019 MRI of the lumbar spine "still show[ing] some disc bulging and nerve root contact." (Id. at 1716.) Yet the provider noted that these findings "do[] not make perfect sense with her symptoms." (Id.) In any event, nerve root contact—or even nerve root irritation—is "a lesser condition than nerve root compression as specified in Listing 1.04(A)." *Taylor*, 2021 WL 6101618, at *2.

Lissette also points to other records that she says demonstrate nerve root compression with neuro-anatomical pain distribution, limited motion, motor loss accompanied by sensory or reflex loss, and positive straight-leg raising. (R. 15, Pl.'s Br. at 11 (citing A.R. 1698, 1715-16, 1719, 1756, 1871).) In August 2019 Lissette had limited motion in her back because of pain, although her neurologic exam was

9

"[g]rossly intact." (Id. at 1698.) A few months later, in November 2019, Lissette reported low-back pain radiating down both lower extremities, (id. at 1715-16), but on examination she was in "[n]o acute distress" and, as the ALJ noted, her gait was normal without pain, (id. at 36 (citing id. at 1715)). Lissette also had "some weakness" in her lower-left extremity and decreased sensation in the left leg and foot. (Id. at 1716.) And she was positive on straight-leg testing in April 2019 before her surgery, (id. at 1756, 1871), although "neither test showed a positive result *in both the sitting and supine positions*, as the listing requires," (R. 23, Govt.'s Mem. at 17 (emphasis in original)).[3] In short, the ALJ did not err in finding that Lissette did not meet Listing 1.04(A). Substantial evidence—discussed at step three and when assessing the RFC before step four—supports the ALJ's finding. Nevertheless, because the ALJ erred in evaluating the medical opinion evidence, remand is necessary. The court does not reach Lissette's remaining arguments.

## Conclusion

For the foregoing reasons, Lissette's motion for summary judgment is granted, the government's is denied, and this matter is remanded.

ENTER:

_____
**Young B. Kim
United States Magistrate Judge**

---

[3] In her reply, Lissette argues that the government's position amounts to "post hoc rationalization" and conflicts with the SSA's own policy for straight-leg testing. (R. 24, Pl.'s Reply at 4-5.) But in its sur-reply, the government notes that the straight-leg provision cited by Lissette did not take effect until April 2021 and does not apply here. (R. 27, Govt.'s Sur-Reply at 1-2.)